IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIVERTH PEART,<br><br>               Petitioner,<br><br>vs.<br><br>M. ROYCE, Superintendent, Green Haven Correctional Facility,[1]<br><br>               Respondent. | No. 9:17-cv-01187-JKS<br><br>MEMORANDUM DECISION |

Viverth Peart, a state prisoner proceeding *pro se,* filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Peart is in custody of the New York Department of Corrections and incarcerated at the Green Haven Correctional Facility. Respondent has answered the Petition, and Peart has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On March 7, 2012, Peart was charged with two counts of first-degree rape, two counts of third-degree rape, one count of first-degree attempted criminal sex act, one count of third-degree attempted criminal sex act, and one count of endangering the welfare of a child. On direct appeal of his conviction, the Appellate Division of the New York Supreme Court summarized the following facts underlying the charges against Peart and the evidence presented at trial:

> [Peart] allegedly subjected the victim, his stepdaughter, to sexual touching for several years and forced her to engage in sexual intercourse with him in September 2011 and November 2011 when she was 16 years old and he was 55 years old. About a week after the November 2011 incident, she reported what had occurred to a family member who contacted the police.
> . . . .

---

[1] M. Royce is substituted for Thomas Griffin as Superintendent, Green Haven Correctional Facility. FED. R. CIV. P. 25(d).

> The victim testified at length regarding [Peart's] conduct. She recalled that, when she was in sixth grade, he started touching her thighs, breasts and vagina at various times and places when alone with her. She had a poor relationship with her mother, and her effort to talk to her mother about [Peart;s] conduct was unsuccessful. He encouraged her to have sex before she got much older. In September 2011, she returned home after smoking marihuana with her stepbrother, took a shower and, as she exited the bathroom clothed only in a towel, [Peart] led her by the wrist to a bedroom. He placed her on a bed and she then felt his penis push against her vagina. This caused her to jump back and she left the room. She testified that, in November 2011, she had sex with her boyfriend for the first time and he then left at about 10:00 p.m. Approximately an hour later, [Peart] came into her room, began performing oral sex upon her and then inserted his penis into her vagina.
>
> Videos of police interviews with [Peart] were shown to the jury. He denied engaging in sexual intercourse with the victim. He claimed that she offered him sex if he bought her a new cell phone and that, after he purchased her a phone, she came into his bedroom wearing only a towel and lied down on his bed. Although he acknowledged picking up her legs and looking at her, he claimed that he then walked away. Bedding from the victim's room obtained via a search warrant revealed blood stains but no seminal fluid. A forensic scientist testified that the samples matched the victim and revealed at least two male donors, but the samples were not sufficient for comparison to a specific male.

*People v. Peart*, 36 N.Y.S.3d 281, 282-83 (N.Y. App. Div. 2016).

At the conclusion of trial, a jury convicted Peart as charged. The trial court then sentenced him to 20 years' imprisonment with 20 years of post-release supervision for each of the two counts of first-degree rape, to be served consecutively, and shorter concurrent sentences for all other convictions.

Through counsel, Peart appealed his conviction on the following grounds: 1) improper admission of highly-prejudicial evidence in violation of *Molineux*;[2] 2) insufficiency of the

---

[2] *People v. Molineux*, 61 N.E. 286 (N.Y. 1901) (sets out the rule that evidence of prior bad acts cannot be used to prove that the defendant has a propensity to commit such acts, but may be used for certain other purposes); *cf.* FED. R. EVID. 404(b) ((1)" Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

evidence; and 3) harsh and excessive sentence. In a *pro se* supplemental brief, Peart also argued that independent evidence did not corroborate the victim's testimony in violation of the New York Penal Code and trial counsel rendered ineffective assistance. The Appellate Division unanimously affirmed the judgment against Peart in a reasoned opinion issued on July 21, 2016. *Peart*, 36 N.Y.S.3d at 284. On November 4, 2016, the New York Court of Appeals summarily denied Peart's petition for leave to appeal. Docket No. 23-3 at 10.

Peart then timely filed a *pro se* Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254 on October 23, 2017. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A). On November 20, 2017, Peart filed an Amended Petition ("Petition", Docket No. 7), which is now before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Peart raises the following five grounds for relief: 1) the trial court violated his right to due process when it admitted evidence of a prior bad act; 2) his conviction was against the weight of the evidence; 3) his sentence is excessive; (4) the victim's testimony was not corroborated in violation of New York Penal Law § 130.16(2)(b); and 5) trial counsel rendered ineffective assistance. Docket No. 7 at 4–11.

In his Reply, Peart attempts to raise two additional grounds for relief, alleging actual innocence based on his son's written statement[3] and that he was convicted based on fraudulent

---

[3] Petitioner's son, Tristan Peart, provided a written statement, signed and notarized, which refers in relevant part to "the nefarious plot of my sister due to the fact that [Peart] refused to buy her a cell phone because of her indulgence in marijuana which resulted in her being sexually promiscuous, with a number of sexual partners, where I witness [*sic*] her having sexual activities with a friend of mine the night of the incident." Docket No. 31 at 17.

3

evidence admitted at trial.[4] Docket No. 31 at 2-6. Similarly, Peart's Reply asserts new arguments based on different facts in support of his ineffective assistance claim. The Court does not ordinarily consider grounds raised after the initial Petition. "The petition must (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief requested . . . ." Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2012) (emphasis added). To the extent that Peart wishes to raise additional grounds, the proper procedure would be to file a motion to amend the Petition under Federal Rule of Civil Procedure 15. In this case, however, such a motion would be futile because the amendment would not relate back to the initial filing and would, therefore, be barred by the one-year limitation period of 28 U.S.C. § 2244(d)(1). *See Mayle v. Felix*, 545 U.S. 644, 655-64 (2005) (discussing at length the interplay between Habeas Rule 2(c) and Fed. R. Civ. P. 15). Accordingly, this Court will not address the merits of any additional claims raised in Peart's Reply.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[4] Peart claims the prosecution defrauded the court by eliciting evidence known to be untrue with respect to allegations that Peart supplied the victim with marijuana and smoked marijuana with her. Docket No. 31 at 5-6. Peart rests his argument on Federal Rule of Civil Procedure 60(b), which permits this Court to set aside a judgment for fraud on the court. *Cf.,* N.Y. CIV. PRAC. LAW R. 5015(a)(3) (similarly providing that "the court which rendered a judgment or order may relieve a party from it . . . upon the ground of: . . . fraud, misrepresentation, or other misconduct of an adverse party").

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the

claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1.     Evidentiary Error

Peart first argues that the trial court violated his right to due process when it admitted evidence of a prior bad act by permitting the victim to testify on re-direct that Peart had previously given her marijuana. Docket No. 7 at 6. The Appellate Division considered and rejected this claim on direct appeal as follows:

> During cross-examination of the victim, [Peart] asked a series of questions attempting to establish a motive for her to lie about [Peart], including whether he had disapproved and confronted her about using marihuana. The victim's brief testimony on re-direct that [Peart] had provided her with marihuana clarified the misleading perception created by [Petitioner]'s cross-examination and [the] Supreme Court interjected an appropriate limiting instruction.

*Peart*, 36 N.Y.S.3d at 282.

Respondent urges the Court to deny this claim as unexhausted and procedurally defaulted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *See Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

Although Peart raised this claim on state law grounds, he did nothing to alert the state court that his claim was based on federal law as well. *See Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (a petitioner who does not cite "chapter and verse of the Constitution" may nonetheless "fairly present to the state courts the constitutional nature of his claim" through: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation"). Moreover, "when a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should

consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991). Because Peart may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

In any event, even if Peart's claim is procedurally defaulted, this Court nonetheless may deny his claim on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, this Court will not dismiss this claim solely on procedural grounds but will instead address its merits.

Under *Molineux,* evidence of prior crimes or bad acts may be admitted for the purpose of showing, *e.g.*, 1) motive, 2) intent, 3) absence of mistake or accident, 4) common scheme or plan, or (5) identity, as long as its probative value outweighs the prejudicial effect. *See Molineux*, 61 N.E. at 293. This evidence is also admissible to serve as background information or to complete the narrative of the events. *See People v. Dennis*, 937 N.Y.S.2d 496, 498 (N.Y. App. Div. 2012). The record shows that the People did not seek to offer Peart's bad act as proof of the crimes charged, but instead on re-direct solicited testimony to complete the narrative that "clarified the misleading perception created by [Petitioner's] cross-examination." *People v. Peart*, 36 N.Y.S.3d at 282; *see also People v. Dennis*, 937 N.Y.S.2d at 498. Thus, *Molineux* is inapplicable here. Indeed, *Molineux* claims are typically not cognizable on habeas review. *See,*

*e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation").

In any event, even if it were cognizable on federal habeas review, Peart is not entitled to relief on it. Although Peart provides no case law indicating that such balancing is required out of a *Molineux* situation, the record reflects that the trial court considered whether the probative value of the evidence outweighed its potential prejudice, and concluded that it did. *See People v. Alvino*, 519 N.E.2d 808, 812 (N.Y. 1987). Peart's questions on cross-examination attempted to show the victim's motive to lie about Peart because he was allegedly upset that she had been smoking marijuana. Evidence that Peart was the source of her marijuana on more than one occasion would suggest that she knew he did not disapprove of her using marijuana and would not on that basis be motivated to falsely accuse him. The trial court also provided a limiting instruction to ensure that the jury would properly evaluate the testimony and not consider it for propensity purposes. That the Appellate Division was "unpersuaded that reversible error resulted from this testimony" was not contrary to Supreme Court law and did not violate Peart's constitutional rights. For the foregoing reasons, this Court concludes that Peart is not entitled to habeas relief on this claim.

Ground 2.    Weight/Insufficiency of the Evidence

Peart next argues, as he did on direct appeal, that the jury's verdict was against the weight of the evidence. Docket No. 7 at 8. As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted). The Court therefore denies Peart's weight of the evidence claim on that basis.

However, this Court must broadly construe *pro se* arguments. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Petitioner's Reply suggests that Peart also claims that the evidence is insufficient to sustain his conviction.[5] Docket No. 31 at 12-13. Although this type of claim is

---

[5]    At least some federal courts in this Circuit have concluded that presenting a weight of the evidence claim without more also raises a federal sufficiency of the evidence claim for purposes of habeas exhaustion. *See, e.g.*, *Williams v. LaValley*, No. 9:12-cv-01141, 2014 WL 1572890, at *3 (N.D.N.Y. Apr. 17, 2014); *Martin v. Brown*, No. 08-CV-0316, 2010 WL 1740432, at *7-8 (E.D.N.Y. Apr. 29, 2010). Indeed, the Second Circuit has suggested in dicta that a petitioner who raises a state law weight of the evidence claim on direct appeal has both raised and exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes. *See Liberta v. Kelly*, 839 F.2d 77, 80 n.1 (2d Cir. 1988); *see also Wilson v. Heath*, 938 F. Supp. 2d 278, 290 (N.D.N.Y. 2013) (noting that "the Second Circuit [in *Liberta*] has suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes"). In an abundance of caution, this Court will assume that the Second Circuit will ultimately clearly

cognizable on federal habeas review, in this case, it is nonetheless without merit. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010) (reaffirming this standard).

This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the fact finder by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318–19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and

---

hold that, for exhaustion purposes, the presentation of a weight of the evidence claim is sufficient to exhaust a federal sufficiency of the evidence claim and address the merits of the claim.

may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16.

In support of his claim, Peart avers that there is a "lack of corroborating physical evidence or other proof supporting the victim's version of events." Docket No. 7 at 8. According to Peart, "[t]he trial court failed to weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that are drawn from the testimony." *Id.* However, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Even it were possible to draw a different inference from a conflict in the evidence, this Court is required to resolve that conflict in favor of the prosecution which prevailed with the jury. *See Jackson*, 443 U.S. at 326. A single witness' testimony, if believed by the jury, is sufficient to support a federal conviction regardless of whether it is corroborated so long as it is not "incredible on its face and is capable of establishing guilt beyond a reasonable doubt."

*United States v. Parker*, 903 F.2d 91, 97 (2d Cir.1990); *see also United States v. Baker*, 899 F.3d 123, 129–30 (2d Cir.), *cert. denied*, 139 S. Ct. 577 (2018) ("Because a federal conviction 'may be supported by the uncorroborated testimony of even a single accomplice... if that testimony is not incredible on its face,' Kennedy's testimony alone was sufficient to convict Baker.") (quoting *United States v. Parker*, 903 F.2d at 97); *United States v. Ferguson*, 676 F.3d 260, 285 (2d Cir. 2011). Moreover,

> [a]ny lack of corroboration goes merely to the weight of the evidence, not to its sufficiency. Whether or not there is corroboration for an accomplice's testimony, the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal, and we must defer to the jury's assessments of both the weight of the evidence and the credibility of the witnesses.

*United States v. Taylor*, 475 F. App'x 780, 781 (2d Cir. 2012) (quoting *United States v. Parker*, 903 F.2d at 97). A review of the record demonstrates that the victim's testimony was not incredible on its face, and thus Peart's arguments on this point are unavailing.

Furthermore, Peart bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such a burden. Based on the evidence described above, the record does not compel the conclusion that no rational trier of fact could have found proof that Peart committed the charged acts against the victim, especially considering the double deference owed under *Jackson* and the AEDPA. Peart therefore cannnot prevail on his insufficiency of the evidence claim either.

Ground 3.     Harsh and Excessive Sentence

Peart additionally challenges the length of his sentence. Although Peart now contends that his sentence does not fall within the statutory range, the record reflects, and he acknowledged on direct appeal, that the sentences he received were no greater than those

authorized by the relevant statutes. It is well-settled that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of the state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Because the sentences imposed were within the statutory range prescribed by New York law, Peart cannot prevail on this claim.

Construing his *pro se* Petition liberally, *Erickson*, 551 U.S. at 94, Peart also appears to raise a vindictive sentencing claim based on the fact that the aggregate sentenced imposed was greater than three times what the People had offered in plea negotiations. The Supreme Court has determined that due process is violated when a penalty is imposed upon a person for electing to exercise a constitutionally protected right, including the right to have a jury trial in a criminal case. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). "However, the mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations, does not indicate that a petitioner has been punished for exercising his right to proceed to trial." *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) (citation omitted); *see also Naranjo v. Filion*, No. 02 Civ. 5449, 2003 WL 1900867, at *9-10 (S.D.N.Y. Apr. 16, 2003) (rejecting claim that disparity between the prosecution's pretrial plea offer of 5-10 years and his subsequent sentence of 25-50 years suggested vindictiveness). Although Peart ultimately received an aggregate 40-year sentence of imprisonment, which is much longer than the 12-year plea offer he

rejected,[6] there is no evidence in the record to suggest that vindictiveness or any other improper criterion influenced the trial court when imposing Peart's sentence. Thus, Peart cannot prevail on this basis.

Peart also seems to argue that, because Count 1 and Count 5 occurred at the same time and place, those sentences should have been imposed concurrently rather than consecutively. Docket No. 7 at 9. But it was within the trial court's discretion under New York law to impose consecutive sentences, and this Court cannot reexamine the issue. *See Carvajal v. Artus*, 633 F.3d 95, 107 (2d Cir. 2011) ("[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")..

Furthermore, to the extent Peart's excessive sentence claim could be construed as a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, is also without merit. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial

---

[6] The record shows that Peart understood the People's offer to plead guilty to a single count of first-degree rape with a maximum sentence of 12 years' imprisonment plus 20 years of post-release supervision. There is no indication in the record that his rejection of the plea was involuntary or unknowing, and Peart does not allege as such in his Petition.

deference.'" *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)). Here, the aggregate sentence of 40 years' imprisonment imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment). Accordingly, Peart cannot prevail on any challenge to his sentence.

Ground 4.   Lack of Corroboration

Peart next argues, as he did on direct appeal, that the evidence at trial violated New York Penal Law § 130.16, which requires that the victim's testimony be corroborated by other evidence. Docket No. 7 at 11. But § 130.16 is applicable only to victims whose lack of consent "results solely from incapacity to consent because of the victim's mental defect, or mental incapacity." N.Y. PENAL LAW § 130.16. Here, the victim's lack of consent was not predicated on her mental incapacity but rather her status as a minor, and thus § 130.16 is not applicable. Although a prior version of § 130.16 required corroboration where the incapacity to consent resulted from the victim's age, a 1984 amendment eliminated that corroboration requirement. *Roe v. Senkowski*, No. , 2001 WL 1860884, at *3 (N.D.N.Y. Feb. 20, 2001) (quoting *People v. Carroll*, 95 N.Y.2d 375, 383 (N.Y. App. Div. 2000).

In any event, Peart raises a claim that is grounded in state law exclusively rather than any violation of the federal Constitution. As noted above, it is well-settled that issues of improper application of state law are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout*, 562 U.S. at 221–22. Accordingly, Peart's state-law-based claim must fail because it is uncognizable on federal habeas review and inapplicable to the facts of this case.

Ground 5.   Ineffective Assistance of Counsel

Finally, Peart generally claims that trial counsel rendered ineffective assistance because he was "ill prepared" and committed "multiple[] inexcusable failures." Docket No. 7 at 10. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Peart must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

17

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *See Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. Likewise, the Second Circuit has instructed that federal courts should, like the New York courts,

view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Peart's ineffective assistance claims must fail, however, even under the more favorable New York standard. Although Peart's Petition does not specify counsel's alleged errors, it appears that the Petition re-raises those contentions he unsuccessfully argued by *pro se* supplemental brief on direct appeal. Namely, Peart asserted that trial counsel failed to: 1) consult a DNA analyst; 2) "have [Peart's] blood type and medical records determined;" and 3) effectively cross-examine the State's forensic experts. Docket No. 25-1 at 669. But Peart does not explain how the determination of his blood type would have supported his defense, how the retention of a DNA expert would have led to a different outcome, or how counsel should have cross-examined the State's experts. "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). As such, a claim of ineffective assistance of counsel must contain specific factual contentions regarding how counsel was ineffective. *See Hall v. Phillips*, No. 1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review); *see, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either *Strickland* prong" (citation omitted)).

Moreover, trial counsel's decision to forgo additional forensic investigation and testing was a strategic trial decision because the existing forensic evidence was neutral and further evidence was as likely to be inculpatory as exculpatory. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir.

1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." (citations and internal quotation marks omitted)). Thus, Peart's ineffective assistance of counsel claim is without merit. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims).

## V. CONCLUSION

Peart is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 31, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
